## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS – CENTRAL DIVISION

| | |
|---|---|
| SANCHARAE KELLEY, an individual; <br> KIMBERLY MOSQUEA, an individual; <br> DANIA SEVERINO, an individual; <br> DEIMARIS DELGADO, an individual; and <br> JAMILEX TRINIDAD, an individual, <br><br> Plaintiffs, <br><br> v. <br><br> MANLO ENTERPRISES, INC. dba <br> MARIO'S SHOWPLACE II, a Massachusetts <br> corporation; FRANK A. CHIELLO JR., an <br> individual; DOE MANAGERS 1-3; and DOES <br> 4-10, inclusive, <br><br> Defendants. | Civil Action No.: <br><br> **COLLECTIVE ACTION** <br><br> **COMPLAINT FOR DAMAGES** <br> 1. **Failure to Pay Minimum Wages, 29 U.S.C. § 206;** <br> 2. **Failure to Pay Overtime Wages, 29 U.S.C. § 207;** <br> 3. **Illegal Kickbacks, 29 C.F.R. § 531.35; and** <br> 4. **Unlawful Taking of Tips, 29 U.S.C. § 203** <br><br> **DEMAND FOR JURY TRIAL** |

Plaintiffs SANCHARAE KELLEY, KIMBERLY MOSQUEA, DANIA SEVERINO, DEIMARIS DELGADO and JAMILEX TRINIDAD ("Plaintiffs"), individually and on behalf of all others similarly situated, allege the following upon information and belief, based upon investigation of counsel, published reports, and personal knowledge:

## I.   NATURE OF THE ACTION

1.      Plaintiffs allege causes of action against defendants MANLO ENTERPRISES, INC. dba MARIO'S SHOWPLACE II, a Massachusetts Corporation, FRANK A. CHIELLO JR., an individual, DOE MANAGERS 1 through 3, and DOES 4 through 10, inclusive, (collectively, "Defendants") for damages due to Defendants evading the mandatory minimum wage and overtime provisions of the Fair Labor Standards Act, 29 U.S.C. §§ 201, *et seq.*("FLSA"), illegally absconding with Plaintiffs' tips and demanding illegal kickbacks

including in the form of "House Fees."

2.      These causes of action arise from Defendants' willful actions while Plaintiffs were employed by Defendants.  Sancharae Kelley was employed by Defendants from approximately November 2016 until early 2019. Kimberly Mosquea was employed by Defendants in 2018 and 2019. Dania Severino was employed by Defendants from approximately October 2018 until November 2019. Deimaris Delgado was employed by Defendants from approximately September 2018 until November 2019. Jamilex Trinidad was employed by Defendants in 2019. During their time being employed by Defendants, Plaintiffs were denied minimum wage payments and denied overtime as part of Defendants' scheme to classify Plaintiffs and other dancers/entertainers as "independent contractors." As the Department of Labor explained in a recent  Administrative Interpretation:

> Misclassification of employees as independent contractors is found in an increasing number of workplaces in the United States, in part reflecting larger restructuring of business organizations. When employers improperly classify employees as independent contractors, the employees may not receive important workplace protections such as the minimum wage, overtime compensation, unemployment insurance, and workers' compensation. Misclassification also results in lower tax revenues for government and an uneven playing field for employers who properly classify their workers. Although independent contracting relationships can be advantageous for workers and businesses, some employees may be intentionally  misclassified as a means to cut costs and avoid compliance with labor laws.[1]

As alleged in more detail below, that is exactly what Defendants are doing in this case.

3.      Plaintiffs worked at Defendants' principal place of business, Mario's Showplace II, located at 147 Thompson Road, Webster, Massachusetts 01570.

4.      Defendants failed to pay Plaintiffs minimum wages and overtime wages for all hours worked in violation of 29 U.S.C. §§ 206 and 207 of the FLSA.

---

[1]    *See* DOL Admin. Interp. No. 2015-1, available at http://www.dol.gov/whd/workers/Misclassification/AI- 2015_1.pdf.

5.      Defendants' conduct violates the FLSA, which requires non-exempt employees to be compensated for their overtime work at a rate of one and one-half (1.5) times their regular rate of pay. *See* 29 U.S.C. § 207(a).

6.      Furthermore, Defendants' practice of failing to pay tipped employees pursuant to 29 U.S.C. § 203(m), violates the FLSA's minimum wage provision. *See* 29 U.S.C. § 206.

7.      Plaintiffs bring a collective action to recover the unpaid overtime compensation and minimum wage owed to each of them individually and on behalf of all other similarly situated employees, current and former, of Defendants. Members of the Collective Action are hereinafter referred to as "FLSA Class Members."

8.      As a result of Defendants' violations, Plaintiffs and the FLSA Class Members seek to recover double damages for failure to pay minimum wage, overtime liquidated damages, interest, and attorneys' fees.

## II.    PARTIES

9.      At all times relevant, SANCHARAE KELLEY ("Kelley") is an individual adult resident of Connecticut. Furthermore, Plaintiff was employed by Defendants and qualifies as an "employee" of Defendants as defined by the FLSA, 29 U.S.C. § 203(e)(1). Her consent to this action is attached hereto as Exhibit 1.

10.     At all times relevant, KIMBERLY MOSQUEA ("Mosquea") is an individual adult resident of Rhode Island. Furthermore, Plaintiff was employed by Defendants and qualifies as an "employee" of Defendants as defined by the FLSA, 29 U.S.C. § 203(e)(1). Her consent to this action is attached hereto as Exhibit 2.

11.     At all times relevant, DANIA SEVERINO ("Severino") is an individual adult resident of Rhode Island. Furthermore, Plaintiff was employed by Defendants and qualifies as an "employee" of Defendants as defined by the FLSA, 29 U.S.C. § 203(e)(1). Her consent to this action is attached hereto as Exhibit 3.

12.     At all times relevant, DEIMARIS DELGADO ("Delgado") is an individual adult

resident of Massachusetts. Furthermore, Plaintiff was employed by Defendants and qualifies as an "employee" of Defendants as defined by the FLSA, 29 U.S.C. § 203(e)(1). Her consent to this action is attached hereto as Exhibit 4.

13.     At all times relevant, JAMILEX TRINIDAD ("Trinidad") is an individual adult resident of Rhode Island. Furthermore, Plaintiff was employed by Defendants and qualifies as an "employee" of Defendants as defined by the FLSA, 29 U.S.C. § 203(e)(1). Her consent to this action is attached hereto as Exhibit 5.

14.     The FLSA Class Members are all current and former exotic dancers who worked at Mario's Showplace II located at 147 Thompson Road, Webster, Massachusetts 01570 at any time starting three (3) years before this Complaint was filed, up to the present.

15.     Defendant MANLO ENTERPRISES, INC. dba MARIO'S SHOWPLACE II ("Mario's") is a Massachusetts Corporation with its principal place of business located at 147 Thompson Road, Webster, Massachusetts 01570. At all times mentioned herein, Mario's was an "employer" or "joint employer" as defined by the FLSA, 29 U.S.C. § 203(d) and (g). Mario's may be served via its agent for service of process, Richard D. Olive, Jr., 9 Canonchet Trail, Johnston, Rhode Island 02919.

16.     Defendant FRANK A. CHIELLO JR ("Chiello") was/is one of the main manager(s)/owner(s) who executed the policies regarding payment to dancers and management of dancers, including Plaintiffs.

17.     Chiello acted directly or indirectly on behalf of Mario's, and, at all times mentioned herein were "employer(s)" or "joint employer(s)" of Plaintiffs within the meaning of the FLSA. He exerted operational and management control over Mario's, including day-to-day management. He was, and is, frequently present at, owned, directed, controlled and managed the operations at Mario's. He also controlled the nature, pay structure, and employment relationship of Plaintiffs and the FLSA Class Members. Chiello had at all times relevant to this lawsuit, the authority to hire and fire employees at Mario's, the authority to direct and supervise the work of

employees, the authority to sign on the business' checking accounts, including payroll accounts, and the authority to make decisions regarding employee compensation and capital expenditures. Additionally, he was responsible for the day-to-day affairs of Mario's. In particular, he was responsible for determining whether Mario's complied with the FLSA.

18.     DOE MANAGERS 1-3 are the managers/owners who control the policies and enforce the policies related to employment at Mario's.

19.     The true names, capacities or involvement, whether individual, corporate, governmental or associate, of the Defendants named herein as DOES 4 through 10, inclusive are unknown to Plaintiffs who therefore sue said Defendants by such fictitious names. Plaintiffs pray for leave to amend this Complaint to show their true names and capacities when the same have been finally determined. Plaintiffs are informed and believe, and upon such information and belief allege thereon, that each of the Defendants designated herein as DOE is negligently, intentionally, strictly liable or otherwise legally responsible in some manner for the events and happenings herein referred to, and negligently, strictly liable intentionally or otherwise caused injury and damages proximately thereby to Plaintiffs, as is hereinafter alleged.

20.     At all material times, Defendants have been an enterprise in commerce or in the production of goods for commerce within the meaning of 29 U.S.C. § 203(r)(1) of the FLSA because they have had employees at their club engaged in commerce, which has travelled in interstate commerce. Moreover, because of Defendants' interrelated activities, they function in interstate commerce. 29 U.S.C. § 203(s)(1).

21.     Furthermore, Defendants have had, and continue to have, an annual gross business volume in excess of the statutory standard.

22.     At all material times during the three (3) years prior to the filing of this action, Defendants categorized all dancers/entertainers employed at Mario's as "independent contractors" and have failed and refused to pay wages or compensation to such dancers/entertainers. Plaintiffs were individual employees who engaged in commerce or in the

production of goods for commerce as required by 29 U.S.C. §§ 206-207.

23.     Plaintiffs are informed and believe that, at all relevant times herein, Defendants engaged in the acts alleged herein and/or condoned, permitted, authorized, and/or ratified the conduct of its employees and agents, and other Defendants and are vicariously or strictly liable for the wrongful conduct of its employees and agents as alleged herein.

24.     Plaintiffs are informed and believe, and on that basis alleges that, each of the Defendants acted, in all respects pertinent to this action, as the agent or employee of each other, and carried out a joint scheme, business plan, or policy in all respect thereto and, therefore, the acts of each of these Defendants are legally attributable to the other Defendants, and that these Defendants, in all respects, acted as employers and/or joint employers of Plaintiffs in that each of them exercised control over Plaintiffs' wage payments and control over Plaintiffs' duties.

25.     Plaintiffs are informed and believe, and on that basis allege that, at all relevant times, each and every Defendant has been the agent, employee, representative, servant, master, employer, owner, agent, joint venture, and alter ego of each of the other and each was acting within the course and scope of his or her ownership, agency, service, joint venture and employment.

26.     At all times mentioned herein, each and every Defendant was the successor of the other and each assumes the responsibility for the acts and omissions of all other Defendants.

## III.    VENUE AND JURISDICTION

27.     This Court has jurisdiction over the subject matter of this action under 28 U.S.C. § 1331 because this action arises under the FLSA, 29 U.S.C. §§ 201, *et seq*.

28.     Venue is proper in this District because all or a substantial portion of the events forming the basis of this action occurred in this District. Defendants' club is located in this District and Plaintiffs worked in this District.

///

///

IV.    **ALLEGATIONS COMMON TO ALL CAUSES OF ACTION**

(AGAINST ALL DEFENDANTS)

A.    FACTUAL ALLEGATIONS

29.    Defendants operate an adult-oriented entertainment facility located at 147 Thompson Road, Webster, Massachusetts 01570.



(Figure 1 – Mario's of Webster, Massachusetts)

30.    At all times mentioned herein, Defendants were "employer(s)" or "joint employer(s)" of Plaintiffs.

31.    At all times during the three (3) years prior to the filing of the instant action, Defendants categorized all dancers/entertainers employed by Defendants as "independent contractors" and have failed and refused to pay wages to such dancers.

32.    At all times relevant to this action, Defendants exercised a great deal of operational and management control over the subject club, particularly in the areas of terms and conditions of employment applicable to dancers and entertainers.

///

33.     Sancharae Kelley was employed by Defendants from approximately November 2016 until early 2019.

34.     Kimberly Mosquea was employed by Defendants in 2018 and 2019.

35.     Dania Severino was employed by Defendants from approximately October 2018 until November 2019.

36.     Deimaris Delgado was employed by Defendants from approximately September 2018 until November 2019.

37.     Jamilex Trinidad was employed by Defendants in 2019.

38.     The primary duty of an entertainer is to dance and entertain customers, and give them a good experience. Specifically, an entertainer performs stage and table dances, and entertains customers on an hourly basis.

39.     Stated differently, entertainers at Mario's are required to dance on stage, perform table dances, and entertain customers in VIP rooms, all while fully nude.

40.     Plaintiffs worked and performed at the adult-oriented entertainment facility multiple shifts per week. Plaintiffs were an integral part of Defendants' business which operated solely as an adult-oriented entertainment facility featuring fully nude entertainers.

41.     Defendants did not pay entertainers on an hourly basis.

42.     Defendants exercised significant control over Plaintiffs during their shifts and would demand that Plaintiffs stay late when they worked.

43.     Defendants set prices for all VIP performances.

44.     Defendants set the daily cover charge for customers to enter the facility and had complete control over which customers were allowed in the facility.

45.     Defendants controlled music for Plaintiffs' performances.

46.     Defendants controlled the means and manner in which Plaintiffs could perform.

47.     Defendants placed Plaintiffs on a schedule.

48.     Defendants had the authority to suspend, fine, fire, or otherwise discipline

entertainers for non-compliance with their rules regarding dancing.

49.     Defendants actually suspended, fined, fired, or otherwise disciplined entertainers for non-compliance with their rules regarding dancing.

50.     Although Defendants allowed entertainers to choose their own costumes, Defendants reserved the right to decide what a particular entertainer was allowed to wear on the premises. In order to comply with the Mario's dress and appearance standards, Plaintiffs typically expended approximately one (1) hour of time each shift getting ready for work without being paid any wages for such time getting ready.

51.     Plaintiffs were compensated exclusively through tips from Defendants' customers. That is, Defendants did not pay Plaintiffs whatsoever for any hours worked at their establishment.

52.     Defendants also required Plaintiffs to share their tips with Defendants, and other non-service employees who do not customarily receive tips, including the managers, and disc jockeys ("DJs").

53.     Defendants are in violation of the FLSA's tipped-employee compensation provision, 29 U.S.C. § 203(m), which requires employers to pay a tipped employee a minimum of $2.13 per hour. Defendants also violated 29 U.S.C. § 203(m) when they failed to notify Plaintiffs about the tip credit allowance (including the amount to be credited) before the credit was utilized. That is, Defendants' exotic dancers were never made aware of how the tip credit allowance worked or what the amounts to be credited were. Furthermore, Defendants violated 29 U.S.C. § 203(m) because they did not allow Plaintiffs to retain all of their tips and instead required that she divide her tips amongst other employees who do not customarily and regularly receive tips. Because Defendants violated the tip-pool law, Defendants lose the right to take a credit toward minimum wage.

54.     Defendants exercised significant control over Plaintiffs through written and unwritten policies and procedures. Defendants had visibly posted in the employees' locker room

the written employee rules for late arrivals and early leaves and the corresponding fees for which performers would be responsible.

55.    Mario's provided and paid for all advertising and marketing efforts undertaken on behalf of Mario's.

56.    Mario's paid for the buildings used by Mario's maintenance of the facilities, the sound systems, stages, lights, beverages and inventory used at the facilities.

57.    Defendants made all hiring decisions regarding wait staff, security, entertainers, managerial and all other employees on the premises.

58.    The opportunity for profit and loss for Mario's far exceeded Plaintiffs' opportunity for profit and loss from work at Mario's.

59.    Nude dancing is an integral part of the operations at Mario's. The advertising and logo for Mario's prominently displays nude dancing for its customers.

60.    Mario's needs entertainers to successfully and profitably operate the Mario's business model.

61.    The position of entertainer requires no managerial skill of others.

62.    The position of entertainer requires little other skill or education, formal or otherwise.

63.    The only requirements to become an entertainer at Mario's are "physical attributes" and the ability to dance seductively. Plaintiffs did not have formal interviews but instead were each glanced over "up and down" and participated in brief auditions by the manager before being offered employment opportunities. The amount of skill required is more akin to an employment position than that of a typical independent contractor. Defendants do not require prior experience as an entertainer or any formal dance training as a job condition or prerequisite to employment. Defendants do not require the submission of an application or a resume as part of the hiring process. In fact, Plaintiffs had little or no formal dance training and experience before auditioning to dance at Mario's.

64.     Defendants failed to maintain records of wages, fines, fees, tips and gratuities and/or service charges paid or received by entertainers.

65.     Plaintiffs were not paid an hourly minimum wage or *any* hourly wage or salary despite being present at Defendants' facility and required to work and entertain its customers at any time during an eight-plus (8+) hour work shift.

66.     Plaintiffs were not paid overtime wages at one-and-a-half (1.5) times the regular minimum wage rate for *any* hours worked despite being present at Defendants' facility and required to work and entertain its customers for longer than eight (8) hours per shift.

67.     Plaintiffs were not paid an hourly minimum wage for the typical one (1) hour of time expended prior to each shift to get ready for work, including applying makeup and hair, and to comply with Defendants' dress and appearance standards. Plaintiffs estimate that they each spent up to approximately fifteen hundred U.S. Dollars ($1,500.00) monthly on makeup, hair-related expenses, nails and outfits.

68.     Plaintiffs were not paid an hourly minimum wage for the time she was required to wait at Mario's until the premises and the parking lot were cleared of customers.

69.     The FLSA Class Members had the same pay structure and were under the same controls as Plaintiffs.

70.     Plaintiffs and FLSA Class Members would work over forty (40) hours in some weeks and each worked for Defendants.

71.     Defendants have never paid Plaintiffs and the FLSA Class Members any amount of wages whatsoever, and have instead unlawfully required Plaintiffs and FLSA Class Members to pay them for the privilege of working.

72.     The only source of monies received by Plaintiffs (and the class they seek to represent) relative to their employment with Defendants came in the form of gratuities received directly from customers, a portion of which Plaintiffs and the FLSA Class Members were required to pay to Defendants.

73.     Although Plaintiffs and the FLSA Class Members are required to and do in fact frequently work more than forty (40) hours per workweek, they are not compensated at the FLSA mandated time-and-a-half rate for hours in excess of forty (40) per workweek. In fact, they receive no compensation whatsoever from Defendants and thus, Defendants violate the minimum wage requirement of FLSA. *See* 29 U.S.C. § 206.

74.     Defendants' method of paying Plaintiffs in violation of the FLSA was willful and was not based on a good faith and reasonable belief that its conduct complied with the FLSA. Defendants misclassified Plaintiffs with the sole intent to avoid paying them in accordance to the FLSA; the fees and fines described herein constitute unlawful "kickbacks" to the employer within the meaning of the FLSA, and Plaintiffs are entitled to restitution of such fines and fees.

75.     Plaintiffs and FLSA Class Members who worked at Mario's performed precisely the same job duties - dancing and entertaining at Mario's.

76.     Plaintiffs and FLSA Class Members who worked at Mario's during the applicable limitations period(s) were subject to the same work rules established by the Defendants as identified above.

77.     Plaintiffs and FLSA Class Members at Mario's were subject to the terms and conditions of employment and the same degree of control, direction, supervision, promotion and investment imposed or performed by Defendants.

78.     Plaintiffs and FLSA Class Members at Mario's during the applicable limitations period(s) were subject to the same across-the-board, uniformly applied corporate policy mandated by Defendants.

79.     Plaintiffs and the FLSA Class Members at Mario's, during the applicable limitations period, were subject to the same fees and fines imposed by Defendants.

80.     Defendants required Plaintiffs to pay fees to Defendants and other Mario's employees, including but not limited to managers and DJs.

///

81.     Defendants required Plaintiffs to pay fees to Defendants and other Mario's employees for reasons other than the pooling of tips among employees who customarily and regularly received tips.

82.     As a result of Defendants' across-the-board, standard operating procedure of mischaracterizing dancers/entertainers as "independent contractors" and their consequent failure to pay any wages or compensation whatsoever, it is a certainly that numerous other current and former dancers and entertainers who worked at Mario's during the applicable limitations period would elect to participate in this action if provided notice of same.

83.     Upon information and belief, more than one hundred (100) dancers and entertainers have worked at Mario's during the three (3) to five (5) years prior to the filing of this action.

84.     Plaintiffs are "similarly situated" to the 29 U.S.C. § 216(b) class of persons they seek to represent, and will adequately represent the interests of the class.

85.     Plaintiffs have hired Counsel experienced in class actions and in collective actions under 29 U.S.C. § 216(b) who will adequately represent the class.

86.     Defendants failed to keep records of tips, gratuities and/or service charges paid to Plaintiffs or any other entertainer and failed to maintain and furnish wage statements to Plaintiffs.

87.     Federal law mandates that an employer is required to keep for three (3) years all payroll records and other records containing, among other things, the following information:

a.     The time of day and day of week on which the employees' work week begins;

b.     The regular hourly rate of pay for any workweek in which overtime compensation is due under 29 U.S.C. § 207(a);

c.     An explanation of the basis of pay by indicating the monetary amount paid on a per hour, per day, per week, or other basis;

d.      The amount and nature of each payment which, pursuant to 29 U.S.C. § 207(e), is excluded from the "regular rate";

e.      The hours worked each workday and total hours worked each workweek;

f.      The total daily or weekly straight time earnings or wages due for hours worked during the workday or workweek, exclusive of premium overtime compensation;

g.      The total premium for overtime hours. This amount excludes the straight-time earnings for overtime hours recorded under this section;

h.      The total additions to or deductions from wages paid each pay period including employee purchase orders or wage assignments;

i.      The dates, amounts, and nature of the items which make up the total additions and deductions;

j.      The total wages paid each pay period; and

k.      The date of payment and the pay period covered by payment.

29 C.F.R. 516.2, 516.5.

88.    Defendants have not complied with federal law and have failed to maintain such records with respect to Plaintiffs and the FLSA Class Members. Because Defendants' records are inaccurate and/or inadequate, Plaintiffs and the FLSA Class Members can meet their burden under the FLSA by proving that they, in fact, performed work for which they were improperly compensated, and produce sufficient evidence to show the amount and extent of their work "as a matter of a just and reasonable inference." *See, e.g., Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687 (1946). Plaintiffs seek to put Defendants on notice that they intend to rely on *Anderson* to provide the extent of her unpaid work.

**B.    INDIVIDUAL LIABILITY UNDER THE FLSA**

89.    In *Donovan v. Agnew*, the Court of Appeals for the First Circuit held that individual defendants can be held liable as employers under the FLSA. *Donovan v. Agnew*, 712 F.2d 1509, 1514 (1st Cir. 1983). The FLSA defines "employer" as "any person acting directly or

indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d).

90.     Under the majority rule, individuals who exercise managerial control over employee compensation or work situations have been found to be employers and jointly and severally liable for FLSA violations. *Donovan v. Agnew*, 712 F.2d 1509, 1514 (1st Cir. 1983) (holding that an individual must either be involved in the day-to-day operation or have some direct responsibility for the supervision of the employee.").

91.     Defendant Chiello is individually liable for failing to pay Plaintiffs their wages. The actual identities of DOE Managers 1-3 are unknown at this time.

## V.      COLLECTIVE ACTION ALLEGATIONS

92.     Plaintiffs hereby incorporate by reference and re-allege each and every allegation set forth in each and every preceding paragraph as though fully set forth herein.

93.     Plaintiffs bring this action as an FLSA collective action pursuant to 29 U.S.C. § 216(b) on behalf of all persons who were or are employed by Defendants as exotic dancers/entertainers at any time during the three (3) years prior to the commencement of this action to present.

94.     Plaintiffs have actual knowledge that FLSA Class Members have also been denied overtime pay for hours worked over forty (40) hours per workweek and have been denied pay at the federally mandated minimum wage rate. That is, Plaintiffs worked with other dancers/entertainers at Mario's. As such, they have first-hand personal knowledge of the same pay violations throughout Defendants' club. Furthermore, other exotic dancers/entertainers at Defendants' club have shared with them similar pay violation experiences as those described in this Complaint.

95.     Other employees similarly situated to Plaintiffs work or have worked at Mario's but were not paid overtime at the rate of one and one-half (1.5) their regular rate when those hours exceeded forty (40) hours per workweek. Furthermore, these same employees were denied pay at the federally mandated minimum wage rate.

96.     Although Defendants permitted and/or required the FLSA Class Members to work in excess of forty (40) hours per workweek, Defendants have denied them full compensation for their hours worked over forty (40). Defendants have also denied them full compensation at the federally mandated minimum wage rate.

97.     FLSA Class Members perform or have performed the same or similar work as Plaintiffs.

98.     FLSA Class Members regularly work or have worked in excess of forty (40) hours during a workweek.

99.     FLSA Class Members regularly work or have worked and did not receive minimum wage.

100.    FLSA Class Members are not exempt from receiving overtime and/or pay at the federally mandated minimum wage rate under the FLSA.

101.    As such, FLSA Class Members are similar to Plaintiffs in terms of job duties, pay structure, misclassification as independent contractors and/or the denial of overtime and minimum wage.

102.    Defendants' failure to pay overtime compensation and hours worked at the minimum wage rate required by the FLSA results from generally applicable policies or practices, and does not depend on the personal circumstances of the FLSA Class Members.

103.    The experiences of Plaintiffs, with respect to their pay, are typical of the experiences of the FLSA Class Members.

104.    The specific job titles or precise job responsibilities of each FLSA Class Member does not prevent collective treatment.

105.    All FLSA Class Members, irrespective of their particular job requirements, are entitled to overtime compensation for hours worked in excess of forty (40) during a workweek.

106.    All FLSA Class Members, irrespective of their particular job requirements, are entitled to compensation for hours worked at the federally mandated minimum wage rate.

107.    Although the exact number of damages may vary among FLSA Class Members, the damages for the FLSA Class Members can be easily calculated by a simple formula. The claims of all FLSA Class Members arise from a common nucleus of facts. Liability is based on a systematic course of wrongful conduct by the Defendant that caused harm to all FLSA Class Members.

108.    As such, Plaintiffs bring their FLSA claims as a collective action on behalf of the following class:

> **All of Defendants' current and former exotic dancers/entertainers who worked at the Mario's location in Webster, Massachusetts at any time starting three years before this Complaint was filed.**

## VI.    CAUSES OF ACTION

### FIRST CAUSE OF ACTION

#### FAILURE TO PAY MINIMUM WAGE PURSUANT TO FLSA, 29 U.S.C. § 206

#### (By Plaintiffs Individually and on Behalf of the Collective Against All Defendants)

109.    Plaintiffs hereby incorporate by reference and re-allege each and every allegation set forth in each and every preceding paragraph as though fully set forth herein.

110.    Defendants are engaged in "commerce" and/or in the production of "goods" for "commerce" as those terms are defined in the FLSA.

111.    Defendants operate an enterprise engaged in commerce within the meaning of the FLSA, 29 U.S.C. § 203(s)(1), because it has employees engaged in commerce, and because its annual gross volume of sales made is more than five hundred thousand U.S. Dollars ($500,000).

112.    Defendants failed to pay Plaintiffs the minimum wage in violation of 29 U.S.C. § 206.

113.    Based upon the conduct alleged herein, Defendants knowingly, intentionally and willfully violated the FLSA by not paying Plaintiffs the minimum wage under the FLSA.

///

114.    Throughout the relevant period of this lawsuit, there is no evidence that Defendants' conduct that gave rise to this action was in good faith and based on reasonable grounds. In fact, Defendants continued to violate the FLSA long after it learned that its misclassification scheme and compensation policies were illegal.

115.    Due to Defendants' FLSA violations, Plaintiffs are entitled to recover from Defendants, minimum wage  compensation and an equal amount in the form of liquidated damages, as well as reasonable attorneys' fees and costs of the action, including interest, pursuant to 29 U.S.C. § 216(b).

## SECOND CAUSE OF ACTION

### FAILURE TO PAY OVERTIME WAGES PURSUANT TO FLSA, 29 U.S.C. § 207

### (By Plaintiffs Individually and on Behalf of the Collective Against All Defendants)

116.    Plaintiffs hereby incorporate by reference and re-allege each and every allegation set forth in each and every preceding paragraph as though fully set forth herein.

117.    Each Defendant is an "employer" or "joint employer" of Plaintiffs within the meaning of the FLSA, 29 U.S.C. § 203(d).

118.    Defendants are engaged in "commerce" and/or in the production of "goods" for "commerce" as those terms are defined in the FLSA.

119.    Defendants operate an enterprise engaged in commerce within the meaning of the FLSA, 29 U.S.C. § 203(s)(1), because it has employees engaged in commerce, and because its annual gross volume of sales made is more than five hundred thousand U.S. Dollars ($500,000.00).

120.    Defendants failed to pay Plaintiffs the applicable overtime wage for each hour in excess of forty (40) during each workweek in which they worked in violation of 29 U.S.C. § 207.

121.    Based upon the conduct alleged herein, Defendants knowingly, intentionally and willfully violated the FLSA by not paying Plaintiffs the overtime wage required under the FLSA.
///

122.     Throughout the relevant period of this lawsuit, there is no evidence that Defendants' conduct that gave rise to this action was in good faith and based on reasonable grounds. In fact, Defendants continued to violate the FLSA long after it learned that its misclassification scheme and compensation policies were unlawful.

123.     Due to Defendants' FLSA violations, Plaintiffs are entitled to recover from Defendants, overtime wage compensation and an equal amount in the form of liquidated damages, as well as reasonable attorneys' fees and costs of the action, including interest, pursuant to 29 U.S.C. § 216(b).

### THIRD CAUSE OF ACTION

#### ILLEGAL KICKBACKS, 29 C.F.R. § 531.35

**(By Plaintiffs Individually and on Behalf of the Collective Against All Defendants)**

124.     Plaintiffs hereby incorporate by reference and re-allege each and every allegation set forth in each and every preceding paragraph as though fully set forth herein.

125.     Defendants required Plaintiffs to pay monetary fees to Defendants and other Mario's employees who did not work in positions that are customarily and regularly tipped, in violation of 29 U.S.C. § 203(m).

126.     Defendants' requirement that Plaintiffs pay fees to Defendants and other Mario's employees violated the "free and clear" requirement of 29 C.F.R. § 531.35.

127.     Because Defendants violated the "free and clear" requirement of 29 C.F.R. § 531.35 as alleged above, they were not entitled to utilize the FLSA's tip-credit provision with respect to Plaintiffs' wages.

128.     Because Defendants violated the "free and clear" requirement of 29 C.F.R. § 531.35, all monetary fees imposed on Plaintiffs are classified as illegal kickbacks.

129.     Plaintiffs are entitled to recover from Defendants all fees that Defendants required Plaintiffs to pay in order to work at Mario's, involving but not limited to house fees and tip sharing.

## FOURTH CAUSE OF ACTION

### UNLAWFUL TAKING OF TIPS IN VIOLATION OF THE FLSA, 29 U.S.C. § 203

### (By Plaintiffs Individually and on Behalf of the Collective Against All Defendants)

130.    Plaintiffs hereby incorporate by reference and re-allege each and every allegation set forth in each and every preceding paragraph as though fully set forth herein.

131.    Plaintiffs customarily and regularly received more than thirty U.S. Dollars ($30.00) a month in tips and therefore is a tipped employee as defined in the FLSA, 29 U.S.C. § 203(t), *see also* 29 C.F.R. § 531.50.

132.    At all relevant times, each of the Defendants were "employer(s)" or "joint employer(s)" of Plaintiffs within the meaning of the FLSA, 29 U.S.C. § 203(d).

133.    Defendants are engaged in "commerce" and/or in the production of "goods" for "commerce" as those terms are defined in the FLSA.

134.    Defendants operate an enterprise engaged in commerce within the meaning for the FLSA, 29 U.S.C. § 203(s)(1), because it has employees engaged in commerce, and because its annual gross volume of sales made is more than five hundred thousand U.S. Dollars ($500,000).

135.    Under the Tip Income Protection Act ("TIPA"):
[a]n employer may not keep tips received by its employees for any purpose including allowing managers or supervisors to keep any portion of employees' tips, regardless of whether or not it takes a tip credit.

29 U.S.C. § 203 (m)(2)(B).

136.    Defendants kept a portion of tips paid to Plaintiffs by Defendants' customers in the form of fees, fines, mandatory charges and other payments to management, disc jockeys, and floor men in violation of TIPA.

137.    Defendants required Plaintiffs to participate in an illegal tip pool, which included employees who do not customarily and regularly receive tips, and do not have more than a *de minimis*, if any, interaction with customer leaving the tips (such as the Club DJs and management). *See* U.S. Dep't of Labor, Wage and Hour Division, "Fact Sheet # 15: Tipped

employees under the Fair Labor Standards Act (FLSA)."

138.    The contribution Defendants required Plaintiffs to make after each shift was arbitrary and capricious and distribution was not agreed to by Plaintiffs and other dancers; but rather, was imposed upon Plaintiffs and other dancers.

139.    By requiring Plaintiffs to pool their tips with club management, including the individual Defendants named herein, Defendants "retained" a portion of the tips received by Plaintiffs in violation of the FLSA.

140.    Defendants did not make any effort, let alone a "good faith" effort, to comply with the FLSA as it relates to compensation owed to Plaintiffs.

141.    At the time of their illegal conduct, Defendants knew or showed reckless disregard that the tip-pool which they required Plaintiffs to contribute included non-tipped employees and, therefore, was statutorily illegal. In spite of this, Defendants willfully failed and refused to pay Plaintiffs the proper amount of the tips to which she was entitled.

142.    Defendants' willful failure and refusal to pay Plaintiffs the tips they earned violates the FLSA.

143.    Defendants kept a portion of tips paid to Plaintiffs by Defendants' customers in the form of fees, fines, mandatory charges and other payments to management and DJs in violation of TIPA.

144.    As a result of the acts and omissions of the Defendants as alleged herein, and pursuant to 29 U.S.C. §§ 216(b) and 260, Plaintiffs are entitled to damages in the form of all misappropriated tips, plus interest; as liquated damages, an amount equal to all misappropriated tips, mandatory attorneys' fees, costs, and expenses.

///

///

///

///

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs request of this Court the following relief:

1.      For compensatory damages according to proof at trial of at least $100,000;

2.      For special damages according to proof at trial;

3.      For restitution of unpaid monies;

4.      For attorneys' fees;

5.      For costs of suit incurred herein;

6.      For statutory penalties;

7.      For civil penalties;

8.      For pre-judgment interest;

9.      For post-judgement interest;

10.      For general damages in an amount to be proven at trial;

///

///

///

///

///

///

///

///

///

///

///

///

///

///

11.    For declaratory relief;

12.    For injunctive relief; and

13.    For such other and further relief as the tribunal may deem just and proper.


Dated: May 28, 2020                         /s/ Jacob J. Ventura
                                            Jacob J. Ventura
                                            Massachusetts BBO No. 699953
                                            John P. Kristensen
                                            California Bar No. 224132
                                            (*Pro Hac Vice* forthcoming)
                                            **KRISTENSEN LLP**
                                            12540 Beatrice Street, Suite 200
                                            Los Angeles, California 90066
                                            Telephone:  (310) 507-7924
                                            Fax:  (310) 507-7906
                                            *jacob@kristensenlaw.com*
                                            *john@kristensenlaw.com*

                                            ***Attorneys for Plaintiffs***

## **DEMAND FOR JURY TRIAL**

Plaintiffs hereby demand a trial by jury for all such triable claims.


Dated: May 28, 2020

/s/ Jacob J. Ventura

Jacob J. Ventura
Massachusetts BBO No. 699953
John P. Kristensen
California Bar No. 224132
(*Pro Hac Vice* forthcoming)
**KRISTENSEN LLP**
12540 Beatrice Street, Suite 200
Los Angeles, California 90066
Telephone:  (310) 507-7924
Fax:  (310) 507-7906
*jacob@kristensenlaw.com*
*john@kristensenlaw.com*

***Attorneys for Plaintiff***